177 N.J. Super. 319 (1981)
426 A.2d 542
JOAN GODDARD AND VERNON A. GODDARD, HER HUSBAND, PLAINTIFFS-APPELLANTS,
v.
ORTHOPEDIC CONSULTANT ASSOCIATES, P.A. AND BAYSHORE COMMUNITY HOSPITAL, A CORPORATION, DEFENDANTS-RESPONDENTS, AND ALFRED GREISMAN, BERNARD MURPHY, AND EDMUND KAPPY, PARTNERS AND ALFRED GREISMAN, INDIVIDUALLY, BERNARD MURPHY, INDIVIDUALLY AND EDMUND KAPPY, INDIVIDUALLY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 25, 1980.
Decided February 9, 1981.
*320 Before Judges BOTTER, KING and McELROY.
Gerald B. O'Connor argued the cause for appellants (Balk, Jacobs, Goldberger, Mandell, Seligsohn & O'Connor, attorneys).
Robert Witt argued the cause for respondent, Orthopedic Consultant Associates, P.A. (Carton, Nary, Witt & Arvanitis, attorneys).
Respondent Bayshore Community Hospital did not participate in the appeal.
The opinion of the court was delivered by KING, J.A.D.
*321 This case presents the question whether R. 4:21, providing for the mandatory pretrial submission of medical malpractice cases to special arbitration panels, should be interpreted to preclude amendment of interrogatories pursuant to R. 4:17-7 subsequent to the rendering of the panel's decision. R. 4:21 was adopted in its present mandatory form effective September 11, 1978. The history of the rule and its antecedents has been reviewed in Judge Pressler's annotations, Pressler, Current N.J. Court Rules, Comment R. 4:21, and elsewhere, see Miller, "Medical Malpractice Under R. 4:21," 105 N.J.L.J. 17 (1980); "Report on the Supreme Court's Committee on Relations with the Medical Profession," 101 N.J.L.J. 45 (1978); see, also Vasily v. Cole, 173 N.J. Super. 152 (App.Div. 1980); Suchit v. Baxt, 176 N.J. Super. 407 (Law Div. 1980); Conde v. Brown, 174 N.J. Super. 351 (Law Div. 1980).
Plaintiffs instituted this malpractice suit on October 6, 1977, before R. 4:21 in its existing form was in effect. This case was pretried on December 4, 1978. A panel hearing was held in May 1979. A panel decision adverse to plaintiffs was entered on July 26, 1979 by written order which stated in full, "unanimously determined that there is no basis for the claim of reasonable medical probability to adhere to proper medical standard of care required."[1] A motion for a panel rehearing was filed on September 24 and denied on December 19.
Plaintiff Joan Goddard's malpractice claim had been based on the contention that there was improper operative and postoperative management of the surgical site leading to serious infection and ultimately to excision of the head of the right femur and to total hip replacement. At the panel hearing plaintiffs relied *322 solely on a written report by a Dr. Rubacky dated October 5, 1978 in support of this theory.
On February 25, 1980 plaintiffs sought to amend their answers to interrogatories by forwarding to defense counsel the report dated February 20, 1980 of a Dr. Richard Ball, an additional orthopedic expert on the malpractice issue. Dr. Ball's report also was critical of the postoperative management of infection at the operative site and was essentially similar in theory to Dr. Rubacky's report. On March 14 defense counsel moved to strike the purported amendment as violative of the spirit of R. 4:21. Thereafter, at a call of the list the matter was scheduled for trial on April 21. Following a hearing on April 3 the R. 4:21 judge granted defendants' motion to preclude Dr. Ball's testimony. The motion judge found a conflict between R. 4:21 and R. 4:17 respecting discovery and amendments to interrogatories stating:
I think that there is a conflict between Rule 4:21 and Rule 4:17. It seems to me this conflict has to be resolved at some point, but at this level, the trial level, I believe that the intent of Rule 4:21-1, et seq., would be subverted if I were to permit the substitution at this late date  I shouldn't say substitution  the supplementing of answers to interrogatories at this late date for the production of a new witness.
I mentioned during the course of argument and discussion colloquy with Mr. O'Connor, certainly it cannot be a hard and fast rule. If the expert, for one side or the other, becomes unavailable for good and sufficient reason, and the example we use is if that expert were to die, certainly the party should be given the opportunity to produce an expert and I don't quarrel with that. I think that makes sense. I think that we are confronted now with a conflict between two rules. This Court has been assigned responsibility for the handling of all cases under R. 4:21 up to the point of trial and to attempt to fulfill the intent of Rule 4:21 and I believe that Rule 4:21 should govern and I will grant the motion to bar the testimony of Dr. Ball.
Interestingly, on April 10, 1980 defense counsel sought by letter to supplement his case and name Dr. Reilly, the medical member of the panel, as a witness for the defense at the forthcoming April 21 trial. See R. 4:21-5(d). The propriety of this latter application is not before us.
We granted plaintiffs' motion for leave to appeal from the pretrial ruling of April 3, 1980 precluding use of Dr. Ball as an expert witness. R. 2:2-4.
*323 The procedural guidelines in R. 4:21 do not speak specifically to any limitation upon plaintiffs' proofs at trial as to evidence previously submitted to the arbitration panel. The rule requires that a pretrial conference be held no later than 12 months after defendant has been served. R. 4:21-2(c). Thereafter, the case must be submitted to the panel for decision, with only a few limited exceptions. R. 4:21-2(d). After panel decision the case is treated as all other civil matters except that a unanimous panel decision is "admissible in evidence at trial upon request of any party to the hearing ... but shall be accorded such weight in view of all the relevant evidence adduced at trial." R. 4:21-5(e). The laudatory purposes of R. 4:21 are to (1) "discourage baseless actions," (2) to encourage "settlement of those actions based on reasonable medical probability," (3) "to monitor efficiently these cases through the court" and (4) "to assist in the early disposition of medical malpractice actions." R. 4:21-1. The rule is silent about any modification of R. 4:17, which controls discovery by interrogatories.
The general rule relating to amendment of answers to interrogatories is R. 4:17-7. In pertinent part, the rule states:
Except as otherwise provided by R. 4:17-4(e), if a party who has furnished answers to interrogatories thereafter obtains information which renders such answers incomplete or inaccurate, amended answers shall be served not later than 20 days prior to the first date fixed for trial.
R. 4:17-4(e), effective September 6, 1977, permits a party propounding interrogatories about the identity and reports of experts and treating physicians to compel full and complete answers by a day certain. This rule provides that where, as in this case, the interrogatory answer indicates that the name and report "will be supplied thereafter, the propounder may, on notice, move for an order of the court fixing a day certain for the furnishing of that information by the answering party" or thereafter precluding the testimony of any expert "not so furnished." Subsection (e) was adopted effective September 6, 1977 and was designed to "alleviate the problem caused by the common understanding theretofore that experts' names and *324 reports could be furnished by supplemental answers filed pursuant to R. 4:17-7, namely 20 days prior to trial." Pressler, supra, Comment R. 4:17-4(e); see Fanforillo v. East End Motor Co., 172 N.J. Super. 309 (App.Div. 1980). Defense counsel here did not so move to compel all expert reports by a day certain, probably because he relied on number 18 of the pretrial order dated December 8, 1978 which stated: "All discovery is to be completed no later than February 1, 1979."[2]R. 4:25-3(b)(18). If such a limiting motion had been made and an order entered clearly referring to R. 4:17-4(e), we would have no difficulty in affirming the Law Division's preclusive order entered here. But we do not view that reference above in the pretrial order to discovery precise enough to suspend the general right to amend interrogatories conferred by R. 4:17-7.
Doubtless certain tension exists among R. 4:17-4(e), R. 4:17-7 and R. 4:21. This case was started 11 months before our present R. 4:21 was promulgated and was processed during the nascent stages of the rule's development. As a result of the oral arguments of able counsel, we are reasonably certain that various practices are evolving throughout the State among the specialized medical malpractice bar and the designated R. 4:21 judges to accommodate the problem highlighted by this case. The evolution of every-day case processing under the rule has been, to an extent, one of trial, error and improvisation.
We do not agree with the contention of the defense that R. 4:21 was intended to preempt R. 4:17-7 and R. 4:17-4 in malpractice cases. These rules have been in effect in some form at least since the 1969 revision. The members of the Supreme Court were obviously aware of their existence when they adopted R. 4:21 in 1978. The same general principles of construction *325 applicable to statutes obtain in the construction of court rules. See Diodato v. Camden Cty. Park Comm'n., 136 N.J. Super. 324, 327 (App.Div. 1975); see, also, Douglas v. Harris, 35 N.J. 270, 278 (1961). The intention to change a long-established rule should not be imputed to the Supreme Court in the absence of a clear manifestation. Cf. Elberon Bathing Co. v. Ambassador Ins. Co., 77 N.J. 1, 17-18 (1978). Had the Supreme Court intended that R. 4:21 preempt R. 4:17-4 and R. 4:17-7, undoubtedly it would have spoken to the point.
In the present case, plaintiffs' counsel sought to amend answers to interrogatories on February 25, 1980 with the report of a new expert dated February 20, 1980. The new report did not materially alter or shift plaintiffs' theory of malpractice. Dr. Ball's report was facially fresh and the trial was not scheduled until April 21, 1980, so plaintiffs' amendment was literally appropriate and timely under R. 4:17-7, especially since no preclusive cutoff date for discovery of experts had been specifically set under R. 4:17-4(e), either in the pretrial order or thereafter. However, we consider it undebatable that such last-minute introduction of a new expert into a 2 1/2 year old malpractice case, though perhaps technically defensible, was very disruptive of the salutary objective of R. 4:21 "to assist in the early disposition of medical malpractice actions."
Although the rule does not make the panel's finding dispositive, R. 4:21-5(e), it would certainly make the panel proceedings more effective if all parties fully prepared their entire case for the panel, including the submission of reports of all experts likely to be used at trial. While we reverse the present order precluding Dr. Ball's testimony, principally because the ground rules under the new R. 4:21 were unclear, because the matter is of considerable consequences to all parties, and because the defense also sought even later in the proceeding to name an additional, panel-member expert, we do not condone last-minute amendments of this sort. In the absence of some clarifying rule amendment to R. 4:21 addressed to the problem, we recommend *326 for the future that the pretrial judge include in the R. 4:21-2(c) pretrial order a "day certain" before the panel hearing for furnishing all information about experts and their reports, with specific reference to R. 4:17-4(e)'s explicit sanction that "such order ... provide that an expert or treating physician whose name or report is not so furnished shall not be permitted to testify at trial."[3] Thus, the problem may be accommodated within the framework of the present rules; all parties will be aware of their obligations and the unequivocal perils of noncompliance.
Reversed.
McELROY, J.A.D. (dissenting).
I would affirm the order entered below.
R. 4:21-1 sets forth the purpose of the rule as being:
... [F]or the common interest of the public, the medical and legal professions in the processing of medical malpractice actions with the view toward discouraging baseless actions and encouraging settlement of those actions based on reasonable medical probability; to monitor efficiently these cases through the court; and, to assist in the early disposition of medical malpractice actions.
The action taken today by my colleagues subverts this rule and its purposes. Although it is true that R. 4:21-5(e) provides that the panel's unanimous order, when admitted in evidence at trial, shall not be binding upon the trier of the facts, this provision for admissibility is the only arrow in this rule's quiver. Realistically, it is only this provision which will assist "in the early disposition of medical malpractice actions" by discouraging baseless actions and encouraging settlement of cases having merit. If the panel proceeding is to be merely a dry run where, when one party loses, he may correct his deficiencies by getting a new expert (even one "guaranteed" to present the same theories advanced without success to the panel), then the admissibility *327 provision is stripped of its purpose.[1] Clearly, if the unanimous order of the panel is to have the desired result of "discouraging baseless actions and encouraging settlement of those actions based on reasonable medical probability," the case later presented to the jury ought to be the same as that advanced to the panel. Conde v. Brown, 174 N.J. Super. 351, 355 (Law Div. 1980). If the rule is to be retained in its present form and if its salutary purposes are to be fulfilled, the order entered below must be affirmed.
There is in this case another reason why affirmance is the necessary action. The pretrial judge directed that "all discovery is to be completed no later than Thursday, February 1, 1979." The clear purpose of this judicial order was to freeze the case as to facts, theories, witnesses, experts (and reports and depositions of experts in particular) so that the case could be complete and ready for the panel hearing date of March 14, 1979 provided in paragraph 21 of the same order. The majority takes the view that defendant was ill-advised to rely upon this limiting order and to protect himself should have moved for a R. 4:17-4(e) type of order fixing a day certain for the supplying of names of experts and their reports, and precluding the testimony of any expert not so furnished. I suggest that it is not realistic to expect a party to seek such an order when the pretrial judge has, as here, cut off for the purposes of a R. 4:21 panel case "all *328 discovery." I would hold that defendant's reliance upon the order of the court clearly designed to set up and limit a medical malpractice case for panel submission and eventual trial is not misplaced reliance. Once such an order has been made, the spirit and policy of R. 4:21 requires that amendments of the type here attempted should be demonstrated to be necessary (as in the death or disability of the initial expert), or shown to be based upon other good cause. The mere fact that post-panel one has acquired a new expert is not, per se, good cause. I am aware of the liberality with which R. 4:17-7 is ordinarily relaxed (Pressler, Current N.J. Court Rules, Comment R. 4:17-7), but here the policy of R. 4:21-1 outweighs the usual considerations which attend liberal amendment under R. 4:17-7. To the extent there is conflict, the policy behind R. 4:21 dictates it be paramount to R. 4:17-1. I would therefore affirm.
NOTES
[1] The usefulness at trial of so general an order is questionable but no issue has been presented on this appeal as to the form of the order. See R. 4:21-5(e), which provides for the admissibility of the panel's findings in evidence at trial and states that "the panel shall make specific findings of fact as to whether there was malpractice and, if so, a specification thereof."
[2] Number 10 of the pretrial order limited expert witnesses to "Two each party." Plaintiffs contend that they are entitled to use both experts, Dr. Rubacky and Dr. Ball, thereunder, especially since the defense sought to amend on April 10 just before trial to name the medical panel member, Dr. Reilly, as a defense medical expert.
[3] The pretrial order should also provide a post-panel hearing cutoff date for amending to include the medical panel member as an expert under R. 4:21-5(d).
[1] Plaintiffs insist that the report of the new expert follows that of the old expert and that "the medical and legal issues submitted to the panel ... are the same issues confronted by the report of [the new expert]." One can then only assume that the new man must be a more charming and more articulate witness than the expert who failed to carry the day before the panel. This poses an interesting question as to whether the mere acquisition of the expert presents a situation within the permissible amendment provided by R. 4:17-7. Query, does a new expert who is going to speak to the same medical theories as did the initial expert constitute "information which renders such [prior] answers incomplete or inaccurate?" Under this state of fact the answer must be "no." This is especially so where, as here, the pretrial order cut off all discovery as of February 1, 1979, a date more than one year before this attempted amendment.