185 N.J. Super. 411 (1982)
449 A.2d 528
REGINA A. MARKMANN AND CATHERINE MARKMANN, INDIVIDUALLY, AND CATHERINE R. MARKMANN, AS NATURAL PARENT AND GUARDIAN OF REGINA A. MARKMANN, PLAINTIFFS-APPELLANTS,
v.
JOSEPH L. DESTEFANO, M.D., ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1982.
Decided April 5, 1982.
*412 Before Judges MICHELS, McELROY and J.H. COLEMAN.
James R. Hendren argued the cause for appellants (Avena, Hendren & Friedman, attorneys).
Arthur Montano argued the cause for respondent Dr. Maurice Elovitz (Montano, Summers, Mullen & Manual, attorneys; Glenn P. Callahan on the brief).
Burchard V. Martin argued the cause for respondents Rosenblatts, Stetzer, Aarons and Atlantic City Surgical Group (Martin, Crawshaw & Mayfield, attorneys).
Martin J. McGreevy argued the cause for respondent Dr. A.E. Fontanilla (Carton, Nary, Witt & Arvanitis, attorneys).
No appearance by respondent Atlantic City Medical Center.
The opinion of the court was delivered by McELROY, J.A.D.
This is a medical malpractice matter. We granted plaintiffs leave to appeal from an order, dated June 25, 1981, denying them the right to amend answers to interrogatories to add the name and the report of an additional medical expert, well in *413 advance of the date of trial but after plaintiff's case had been presented to a R. 4:21 medical malpractice panel.
This case, like Goddard v. Orthopedic Consultant Associates, 177 N.J. Super. 319 (App.Div. 1981), a case now on appeal to the Supreme Court of New Jersey and as yet undecided, presents the troublesome problem of the inherent conflict between the underlying purposes of R. 4:21-1 et seq. and R. 4:17-7 which, subject to R. 4:17-4(e), permits amendment to answers to interrogatories up to 20 days before the first trial date.[1] As was true in Goddard, the new expert in this case was not utilized before the R. 4:21 malpractice panel. Here this was so because this *414 expert was obtained by plaintiff after the panel hearing was started and during the recess of the panel. The trial court, in an order dated October 14, 1980, which preceded the one here under review, refused to permit plaintiffs to use the new expert at the continued panel hearing. Leave to appeal that order was denied by this court on November 26, 1980 and plaintiffs do not now argue the correctness of that earlier order. Thus, the question presented is whether a party, prior to trial, may seek to add an expert not used before the R. 4:21 panel. Although the issue is facially similar to that presented in Goddard, it is not of that character because here the eventual decision of the panel, unlike the panel decision in Goddard, was a 2-1 decision, thus inadmissible at trial (R. 4:21-5(e)). The new expert's report, moreover, added in material degree to the opinions and reports of the experts used by plaintiffs before the R. 4:21 panel. The following are the additional facts necessary to our decision. They require reversal of the order entered below.
The case involves claims of malpractice arising out of the onset of cardiac arrest and resulting permanent brain damage to a 29-year-old female. Suit was brought against a group of physicians, hereafter designated as the Rosenblatt group, consisting of Morton and Alfred Rosenblatt, Samuel Stetzer and William B. Aarons, Jr. Also joined were Dr. A.E. Fontanilla, a surgical resident at Atlantic City Medical Center, and Dr. Maurice Elovitz, house surgeon at the same hospital. The Atlantic City Medical Center was sued as well.
Plaintiffs initially submitted expert reports to all defendants from Dr. Chodoff and Dr. Coombs in March 1979. In September 1979 plaintiffs amended answers to interrogatories to supply reports dated July 30, 1979 and August 1979 from Dr. Rachmel Cherner. On February 12, 1980 plaintiffs' counsel advised defendants that he no longer intended to use Dr. Chodoff or Dr. Coombs as expert witnesses. Defendants deposed Dr. Cherner in March 1980.
*415 The pretrial order, apparently dated December 19, 1978 (1979?), provided, "All discovery to be completed by March 1, 1980. Panel hearing will be held on or after April 1, 1980." Item 10 of this order (R. 4:25-1(b)[10]), intended by the rule to limit experts, stated "No limit."
On March 28, 1980, 27 days after the pretrial order cut-off date for discovery, plaintiffs' counsel submitted to defendants a report dated March 24, 1980 from Dr. Eugene N. Binder of Brookline, Massachusetts. By this time the medical malpractice panel hearing had been scheduled for April 15, 1980. On April 3, 1980 counsel for the Rosenblatt group wrote to the R. 4:21 panel judge and requested an adjournment of the panel hearing. On April 15, 1980 the judge adjourned the hearing to June 20, 1980 and advised all attorneys that the panel hearing would not be adjourned again. Defendants then deposed Dr. Binder. It is apparent that neither counsel for the parties nor the court regarded the pretrial order's discovery cut-off date of March 1, 1980 as absolute and controlling.
On June 20, 1980 the malpractice panel convened. It heard presentation of plaintiffs' case and that of the Rosenblatt group. The attorney member of the panel noticed a discrepancy between a page of one copy of the hospital record and the same page as it appeared in a second copy submitted to the panel. By agreement the hearing was adjourned (apparently without date) to obtain the original hospital records. When the panel recessed on June 20, 1980 the cases of Dr. Fontanilla and Dr. Elovitz had not been heard. We do not know if the hospital participated as a party to the hearing. See R. 4:21-5(c).
The present controversy began during the panel recess when, on July 15, 1980, plaintiffs' counsel wrote to all counsel for defendants advising that he intended to use Dr. Edward Frank as an expert witness and on August 18, 1980 forwarded Dr. Frank's expert report. During July and August defendants filed motions to strike Dr. Frank's name as an expert witness. These motions were returnable September 19, 1980 but were *416 postponed until October 10, 1980. On that date the R. 4:21 judge refused to permit plaintiffs to amend their answers to interrogatories and to use Dr. Frank as an additional expert. The transcript of that motion indicates that the panel was scheduled to reconvene the following Friday, October 17, 1980. (A trial date of September 9, 1980 had apparently been adjourned because the panel hearing had not been completed.) Although the trial judge requested counsel for defendants to submit the order barring Dr. Frank, the judge instead drafted an order dated October 14, 1980. That order, after reciting the adjournment of the panel hearing and plaintiffs' attempt to supply the "name and testimony of an additional expert," ruled that "the said application is untimely and violates the provisions of R. 4:21 and is hereby denied." The order also denied a stay of the scheduled panel hearing date. Plaintiffs obtained a temporary stay of the panel hearing from this court and filed a timely motion for leave to appeal from the trial court's order of October 14, 1980.[2]
On November 26, 1980 this court denied plaintiffs' motion for leave to appeal and in doing so noted:
The notice of motion describes the order in question as providing that the amendment to answers to interrogatories to include an additional medical expert be stricken and neither said expert nor his opinions be considered by either the medical malpractice panel nor subsequently at the trial [sic]. However, the order provides only that the application to supply the name and testimony of an additional expert "is untimely and violates the provisions of R. 4:21 and is hereby denied." No mention is made of barring the use of the expert at the time of trial.

*417 Accordingly, we construe the order as relating only to the malpractice panel and we express no opinion on whether the use of the expert at the time of trial may be barred by reason of failure to comply with the rules pertaining generally to discovery. See, e.g., R. 4:17-7.
The motion for a stay of the panel proceedings is denied.
On December 5, 1980 plaintiffs' counsel advised all counsel for defendants of his intention to call Dr. Frank at trial and offered to make the doctor available to any defendant seeking to take his deposition. Apparently, no response was made to this letter at that time.
The panel reconvened on January 30, 1981 and concluded its hearing on that date. On May 11, 1981 the panel rendered the 2-1 decision by a written order pursuant to R. 4:21-5(e). The order recited that "pursuant to Rule 4:21-5, the findings made [herein] shall not be admissible into evidence at the trial of this cause."
On May 20, 1981 counsel for the Rosenblatt group moved to bar Dr. Frank as an expert witness at trial. That motion, joined in by all defendants, was heard on June 12, 1981 before the R. 4:21 judge. The court ruled that Dr. Frank could not be used as plaintiffs' expert at trial; hence, this appeal.
Medical malpractice cases are, as the trial court here viewed them, sui generis. They are of a peculiar class frequently requiring the application of persistent and uncommon legal talent in their presentation and an equally skillful and vigorous defense. Experience has taught us that if they are not efficiently handled by counsel for the parties and ably piloted through the system by the judiciary they occupy unwarranted time for discovery and can occupy inordinate amounts of trial time. The common interests of the public, of litigants and of the medical and legal professions were recognized as requiring that baseless medical malpractice suits be discouraged and that well founded actions be encouraged to settle as early as possible. Thus, in 1978, R. 4:21 came into being as a means of processing such matters.
*418 The rule, in hopeful expectation of relatively speedy disposition, prescribed that in every vicinage a designated judge should be appointed to "monitor efficiently" all such cases through discovery, pretrial motions, pretrial conference and the panel hearing to be conducted before the designated judge, a knowledgeable physician and an experienced trial attorney. R. 4:21-1, R. 4:21-2(b), R. 4:21-3 and R. 4:21-4(a). In order to expedite the process R. 4:21-2(c) directed that the designated judge "shall conduct a pretrial conference ... not later than twelve months following service of process upon the defendants," and required that the pretrial order provide for the submission of the claim to the panel. Implicit in the rule was the expectation that all discovery would be completed prior to the pretrial conference or soon thereafter, so that the case would be ready for panel consideration in little more than one year of service upon the defendant physician. That is the expectation. The reality, unfortunately, is frequently different.
The trial judge in this case is experienced in shepherding R. 4:21 cases and conscious of the burden the rule imposes to "monitor efficiently the case through the court." R. 4:21-1. It is equally clear that he realized that the expeditious process contemplated by the rule necessarily must be tempered by a sense of fairness to all parties. Thus, he granted an adjournment of the first panel date when plaintiffs added Dr. Binder to their list of experts, although that move was made 27 days after the pretrial conference and only 18 days before the date the panel was to meet. This was done to allow plaintiffs to amend interrogatories in order to make their case more complete and to permit defendants to depose the new expert. The ruling was in accord with the trial court's view, already expressed in Conde v. Brown, 174 N.J. Super. 351, 355 (Law Div. 1980), that the "panel hearing date may be regulated according to the completeness of the discovery" and that because the panel "must make findings with respect to the question of malpractice, it follows that all discovery must be completed earlier."
*419 In Conde, where the plaintiff attempted to add an expert after the panel rendered its decision, the judge, who also sat in the present case, refused to permit amendment, holding that to do so "would have the potential of altering the case presented at trial." Id.[3] The Conde opinion presents his reasons for doing so:
The panel procedure is designed to serve as an additional catalyst in the litigation process. It is intended to weed out the worthless case, not to prevent the trial of the cases where a fair factual issue is presented. It was the hope of the committee which drew up the revised rule that settlements would be substantially encouraged as a result of it. Experience to date indicates this hope is being fulfilled. If no settlement is reached, the case goes on the trial calendar and is tried in turn. To permit the plaintiff a change in experts for trial would emasculate the purpose of first presenting the case to the panel. Plaintiffs' assurances that the added expert will testify within the existing parameters of the case are not persuasive. The distinct possibility of new testimony poses substantive prejudice to the defendant.[4]
The reasoning quoted above seems to be the root of the trial judge's later decision to deny plaintiffs the right to use Dr. Frank at trial. The judge properly held Goddard to be inapposite, primarily because the present case was an attempt to vary the evidence presented to the panel. In addition it is clear that the trial judge, as he did in Conde, viewed any attempt to add an expert after a panel has decided the case as destructive of R. 4:21 and its underlying purposes. Thus, the trial judge here held that "nobody [no expert] gets to the jury that didn't get to *420 the panel." This view of the rule quite naturally raises the question as to why a new expert should be disallowed when, as here, (1) the panel decision cannot be used at trial and the new expert report, although it varies from and adds to the evidence presented to the panel, cannot, thus, affect any use of the panel's decision; (2) no trial date has been set[5]; (3) the exercise of proper judicial discretion, under the terms of R. 4:17-7, allows such amendment; (4) the expert is necessary to a complete exposition of plaintiffs' case, and (5) the trial court can, without prejudicing defendants, set a schedule for the deposition of this doctor and the eventual date of trial.
Amendments to answers to interrogatories are viewed in liberal fashion, even as to experts, and the sanction of exclusion of testimony is to be utilized cautiously. The aim of our system of rules of procedure is to better serve the cause of justice. See the dissent in Gittleman v. Central Jersey Bank & Trust Co., 103 N.J. Super. 105, 179 (App.Div. 1967), 52 N.J. 503 (1968) (reversing on that dissent). R. 1:1-2, for this reason, provides that unless otherwise stated, "any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." The principles applicable to amendment of interrogatory answers appear in Brown v. Mortimer, 100 N.J. Super. 395 (App.Div. 1968):
The application of sanctions is consigned to the sound discretion of the court, subject only to the rule that the sanction visited upon the party must be just and reasonable. Our cases recognize three factors which, if disclosed by the circumstances of the particular case, strongly urge the trial court, in the exercise of his discretion, to suspend the imposition of sanctions, namely, (1) the absence of design to mislead, (2) absence of the element of surprise if the evidence is admitted, and (3) absence of prejudice which would result from the admission of the evidence. Branch v. Emery Transportation Co., 53 N.J. Super. 367, 375-76 (App.Div. 1958). [at 401-402]
*421 There is no contention here of a design to mislead. Defendants are hardly surprised. They knew of Dr. Frank and his opinions as early as August 18, 1980. After this court on November 26, 1980 construed the trial court's order of October 14, 1980 as only prohibiting Dr. Frank's use at the panel hearing, plaintiffs' counsel, on December 5, 1980, advised defense counsel of his continued intention to use Dr. Frank at trial. Defendants made no reply to this letter. They made no further move to test plaintiffs' right to use this witness until five months later, although they knew the issue of plaintiffs' right to so use the witness was an open question, perhaps complicated by the existence of the second, and superfluous, order of October 28, 1980. At the time the issue was presented to the court on June 12, 1981, whatever prejudice might have been occasioned to defendants could readily have been dissipated by the exercise of judicial discretion to permit a reasonable time for discovery prior to trial.
The imposition of the sanction of excluding the use of Dr. Frank at trial was not, we are obliged to observe, reached by a weighing of the respective rights of the parties or by any consideration of the prejudice perhaps resulting to the parties. Rather, it was based upon the trial judge's view that the proper application of R. 4:21 and the survival of the purposes underlying the rule would be subverted by permitting the addition of new expert opinion after panel decision. In this we feel the judge erred.
Defendants here advance much the same view as was used by the trial court and point to statements made in the dissenting opinion filed in Goddard where this writer observed:
The action taken today by my colleagues subverts this rule and its purposes. Although it is true that R. 4:21-5(e) provides that the panel's unanimous order, when admitted in evidence at trial, shall not be binding upon the trier of the facts, this provision for admissibility is the only arrow in this rule's quiver. Realistically, it is only this provision which will assist "in the early disposition of medical malpractice actions" by discouraging baseless actions and encouraging settlement of cases having merit. If the panel proceeding is to be merely a dry run where, when one party loses, he may correct his deficiencies by getting a *422 new expert (even one "guaranteed" to present the same theories advanced without success to the panel), then the admissibility provision is stripped of its purpose. Clearly, if the unanimous order of the panel is to have the desired result of "discouraging baseless actions and encouraging settlement of those actions based on reasonable medical probability," the case later presented to the jury ought to be the same as that advanced to the panel. Conde v. Brown, 174 N.J. Super. 351, 355 (Law Div. 1980). If the rule is to be retained in its present form and if its salutary purposes are to be fulfilled, the order entered below must be affirmed. [177 N.J. Super. at 326-327; footnote omitted]
Defendants urge that the above reasoning "applies no less to a case in which the panel finding is inadmissible by reason of not being unanimous" and that "in either case the `dry run' effect occurs, deficiencies are corrected by the introduction of new experts, the case is delayed by the necessity for discovery of the new experts and settlements are thus thwarted, rather than promoted." Defendants argue that R. 4:21 must be accorded general preeminence over the liberal effect of R. 4:17-7 because physician defendants will, by reason of natural reluctance to settle, seize upon the "second chance" to bring in new experts in the many cases where a non-unanimous panel decision exists because defendant physicians have a greater "availability of expert witnesses."
The argument has but facial appeal. The specter raised can be dealt with by the exercise of proper judicial discretion by trial judges. R. 4:17-7 permits amendment only where the answers to interrogatories previously served are, by reason of newly acquired material, rendered "incomplete or inaccurate." Here the information supplied was, as to some defendants, incomplete in the sense that Dr. Frank's opinion added materially to the issues of their alleged negligence, a fact recognized below and in this court by the protesting defendants. A reading of Dr. Frank's opinion demonstrates plaintiffs' need to present it. Our rules are designed to aid in the quest for justice. They should not be used to cut off the search for the truth where, as here, the proffered opinion is necessary to a plaintiff's (or a defendant's) case, merely because the expert comes late into the matter. It is for this reason that R. 4:17-7 permits amendments even after the period of 20 days prior to the first date fixed for *423 trial in circumstances that are "compelling" and "to prevent manifest injustice." See Gittleman, supra, 103 N.J. Super. at 179. The salutary purposes of R. 4:21, which seek to encourage settlement, are better served by a full presentation of facts and honestly held expert opinion.
We reject defendants' view that in cases where the panel decision is not unanimous, the "dry run" effect discussed in the Goddard dissenting opinion should be a matter for judicial concern. Goddard was a case of an unanimous panel decision admissible at trial as an evidential factor. The dissenting judge was concerned that in such case the addition of a new expert, even one "guaranteed" not to vary from the theories presented at the panel hearing, was, nonetheless, a new element in the case and because not presented to the panel, a factor a jury might weigh against the value of the panel's decision. Thus, it was observed that "if the unanimous order of the panel is to have the desired result of `discouraging baseless actions and encouraging settlement of those actions based on reasonable medical probability,' the case later presented to the jury ought to be the same as that advanced to the panel." Goddard, supra, 177 N.J. Super. at 327. When a panel decision is not unanimous it has no effect on the trial evidence later presented and R. 4:21 purposes are not materially involved.
In the circumstances here presented we do not regard R. 4:21 as compelling the exclusion of this obviously necessary witness. We do not, moreover, regard our decision herein as doing material damage to the efficacy of that rule or its intended purposes. When a panel results in a decision which is not unanimous, and thus no one "wins," its order may, nevertheless, have some effect on the prospect of settlement, but clearly not as much as does an unanimous determination, admissible before a jury.
We wish to make clear that we do not consider the question of whether, in all cases, an unanimous panel decision prevents later amendment as to experts. The issue is not before *424 us. That question will have to await another day and, indeed, may be resolved by the expected decision in Goddard. Nor are we to be construed as granting a carte blanche right to amend in all matters where the panel decision lacks unanimity. Our decision is limited to the view that in circumstances where the panel is not unanimous, and upon a showing of a just right to amend and the need for the new expert, a court should weigh the necessity for the additional witness, consider as well the factors recommended in Brown v. Mortimer, supra, and balance them against what is, perhaps, an amorphous hope that a split panel decision will effect a settlement. The later consideration cannot be a controlling factor where a just need for the witness is shown and the ultimate aim is fairness for all the parties.
Here, on balance, plaintiffs' demonstrated need requires vacation of the exclusionary order entered below. Therefore, the order appealed is reversed and vacated. This matter is remanded to the trial court to schedule a reasonable time for discovery by defendants and the setting of a trial date shortly thereafter.
NOTES
[1] R. 4:17-7 provides in pertinent part: "Except as otherwise provided by R. 4:17-4(e), if a party who has furnished answers to interrogatories thereafter obtains information which renders such answers incomplete or inaccurate, amended answers shall be served not later than 20 days prior to the first date fixed for trial." R. 4:17-4(e) reads:

If an interrogatory requires a copy of the report of an expert witness or a treating physician, the answering party shall annex to the interrogatory an exact copy of the entire report or reports rendered by the expert or treating physician or a complete summary of any oral report. The answering party shall further certify that the existence of other reports of that expert or treating physician, either written or oral, are unknown to him and if such become later known or available, he shall serve them promptly on the propounding party, but in no case later than the time provided by R. 4:17-7. If the answer to an interrogatory requesting the name of the party's expert or treating physician or a copy of his report indicates that the same will be supplied thereafter, the propounder may, on notice, move for an order of the court fixing a day certain for the furnishing of that information by the answering party. Such order may further provide that an expert or treating physician whose name or report is not so furnished shall not be permitted to testify at trial.
We observe that although a literal reading of R. 4:17-4(e) suggests its application is limited to situations where a party has answered interrogatories indicating that expert names and reports "would be later supplied," in practice trial judges and lawyers, particularly in medical malpractice cases, have used the rule to obtain and enter orders limiting a party to a date certain to supply names of experts and their reports even where the original answers to interrogatories have given expert names and reports. The purpose, of course, is to freeze a case insofar as experts are concerned. Utilization of the rule for such purpose was recognized, and suggested as proper, in Goddard, supra, 177 N.J. Super. at 325.
[2] Inexplicably, the trial judge, after drafting and signing his own order, signed a second order dated October 28, 1980 at a time when the plaintiffs' motion for leave to appeal the order of October 14, 1980 was before this court by reason of plaintiffs' motion for leave to appeal filed on October 17, 1980. The later order, drawn by counsel for the Rosenblatt group, directed that "plaintiffs are barred from amending answers to interrogatories to include as an additional medical expert, Dr. Edward Frank." No party brought this order to the attention of this court, nor did anyone seek reconsideration of this court's order of November 26, 1980. In the circumstances presented, we regard the October 28, 1980 order as superfluous and inoperative.
[3] The Conde opinion does not directly state that the panel's decision was unanimous, thus admissible at trial. It would appear, however, that such was the case because the court noted that defendant therein questioned "the possible effects of new testimony on the issues decided by the malpractice panel and the validity of the panel's order at trial wherein different testimony may be heard." Id. at 353.
[4] The views expressed above are paralleled by the dissent in Goddard, supra, 177 N.J. Super. at 326-328. We do not, however, have a Goddard issue before us because, as noted earlier in this opinion, unlike Goddard, this case does not involve a unanimous panel determination admissible at trial, and Dr. Franks' opinion, unlike that of the new expert in Goddard, adds materially to plaintiffs' case as it asserts malpractice not presented to the panel as to some of these defendants.
[5] The first trial date of September 9, 1980 was apparently set without knowledge that the panel had recessed without date on June 20, 1980. This date can hardly be realistically regarded as the "first date fixed for trial" referred to in R. 4:17-7.