JOAN GODDARD AND VERNON A. GODDARD, HER HUSBAND, PLAINTIFFS-RESPONDENTS, v. ORTHOPEDIC CONSULTANT ASSOCIATES, P.A., ALFRED GREISMAN, BERNARD MURPHY AND EDMUND KAPPY, PARTNERS AND ALFRED GREISMAN, INDIVIDUALLY, BERNARD MURPHY, INDIVIDUALLY AND EDMUND KAPPY, INDIVIDUALLY, DEFENDANTS-APPELLANTS, AND BAYSHORE COMMUNITY HOSPITAL, A CORPORATION, DEFENDANT.

Argued October 20, 1981—Decided July 29, 1982.

**438**

*Robert R. Witt* argued the cause for appellants (*Carton, Nary, Witt & Arvanitis,* attorneys).

*Gerald B. O'Connor* argued the cause for respondents (*Balk, Jacobs, Goldberger, Mandell, Seligsohn & O'Connor,* attorneys).

The opinion of the Court was delivered by

## CLIFFORD, J.

The issue, here because of a dissent in the Appellate Division, *R.* 2:2–1(a)(2), is whether a party in a medical malpractice action may amend answers to interrogatories pursuant to *R.* 4:17–7 to name an additional expert after the matter has been presented to a *R.* 4:21 medical malpractice panel (hereafter "panel") and after the panel has rendered a unanimous decision. Whereas we allow the amendment under the facts before us, as did the Appellate Division, *Goddard v. Orthopedic Consultant Assoc.,* 177 *N.J.Super.* 319 (1981), we hold that in the future no amendment to answers to interrogatories for the purpose of adding an additional medical expert will be allowed after the panel has given a unanimous decision.

I

The rule requiring that medical malpractice cases be submitted to pretrial panels became effective on September 11, 1978. The rule's purpose is stated in *R.* 4:21–1:

> The procedure set forth in *R.* 4:21 is for the common interest of the public, the medical and legal professions in the processing of medical malpractice actions with the view toward discouraging baseless actions and encouraging settlement of those actions based on reasonable medical probability; to monitor efficiently these cases through the court; and, to assist in the early disposition of medical malpractice actions.

The subsections of the rules seek to promote this purpose in two ways. First, the procedures adopted, where they are conscientiously adhered to, encourage the cases to proceed more quickly to a conclusion than would otherwise be the case. The rules call for pretrial conference of the matter not more than one year after suit is instituted. *R.* 4:21–2(c). At the pretrial, the panel hearing is scheduled. *Id.* All documents upon which the parties intend to rely at the panel hearing must be submitted no later than ten days prior to the hearing. *R.* 4:21–5(b).

The second way that the rule's purpose is promoted is by the use of the panel to identify both those actions that are baseless and those presenting a reasonable medical probability of mal-

practice. These categories are identified by means of a unanimous vote of the panel. Once a unanimous·vote has been rendered, the rule contemplates that the parties in such actions will be motivated to come to some settlement before trial because the unanimous vote is admissible as evidence at any trial. Thus if the panel unanimously finds no malpractice, the plaintiff is encouraged to settle lest at trial a jury be informed that a panel consisting of a judge and a neutral physician and attorney have found no malpractice. A unanimous vote that malpractice was probable would have the same tendency to encourage defendants to be more amenable to settlement.[1]

It is against the background of this arrangement that we examine the effect of permitting a new expert to be named after the panel has rendered a unanimous decision. It becomes immediately apparent that to permit new experts at that point would completely undermine the efficacy of *R.* 4:21. In the unanimous panel situation, as a general rule permitting of very few exceptions (e.g., the death of an expert who testified before the panel), the case that goes to the panel is "frozen": it is that case that goes to trial.

The practice of bringing in new experts after a unanimous panel decision undoubtedly would cause delay in concluding the matter. The adversary of the party who is seeking to introduce the new expert would likely demand further discovery. The adversary might want to introduce a new expert of his own to

---

[1] By a sharply divided vote the Supreme Court Committee on Relations with the Medical Profession recommended in its 1982 Report to the Court that *R.* 4:21 be continued, with two modifications not relevant to this case. Although the Committee was unanimously of the view that the rule is "a valuable tool for managing malpractice. cases," there was disagreement on "whether all aspects of the present rule are necessary to promote timely and efficient case disposition."

Because the 1982 Committee Report acknowledged the inconclusiveness of the data concerning the operation of the Rule, a committee is being formed to develop further information for the Court on this subject.

counter the new testimony, leading to further discovery. The possibilities for delay are obvious.

Where the panel's finding is unanimous, delay is not the only mischief occasioned by such an amendment. As we have already stated, a unanimous panel finding is admissible at trial. If a party were permitted to introduce at trial evidence bearing on the existence *vel non* of liability that was not presented to the panel, that party could then argue that the panel's finding should be given little or no weight since the panel did not have all of the relevant evidence before it when it made its finding. Were this permitted, the panel's finding would have little potency to encourage compromise among the parties. The panel hearing would then be, as the dissent below points out, "merely a dry run where, when one party loses, he may correct his deficiencies by getting a new expert." 177 *N.J.Super.* at 326 (dissenting opinion). If *R.* 4:21 is to be successful, we can not permit such an outcome. See *Conde v. Brown,* 174 *N.J.Super.* 351, 355 (Law Div.1980).

## II

On October 6, 1977, plaintiffs instituted this action alleging that the defendants failed to render proper operative and post-operative care in their treatment of plaintiff Joan Goddard for a hip ailment. Plaintiffs claim that as a result of that improper treatment, Mrs. Goddard contracted a serious infection, which ultimately caused deterioration necessitating replacement of the hip. The case was pretried in December, 1978 and was presented to a *R.* 4:21 panel in May, 1979. On July 16, 1979, the panel issued a decision in which it "unanimously determined that there is no basis for the claim of reasonable medical probability of a failure to adhere to proper medical standards of care required." Plaintiffs' subsequent motion for a panel rehearing was denied.

On February 25, 1980, plaintiffs attempted to amend their answers to interrogatories to include an additional expert witness, Dr. Richard Ball. Defendants moved to strike the addition

of another expert after the panel's unanimous finding had been announced. After a hearing on April 3, 1980, the judge who presided at that panel granted the motion to bar Dr. Ball's testimony. Plaintiffs successfully sought leave to appeal that interlocutory order to the Appellate Division, *R.* 2:2–4.

That court, with one judge dissenting, reversed the order barring Dr. Ball's testimony. 177 *N.J.Super.* at 325–26. The majority of the court below recognized, as did the *R.* 4:21 judge, that there is some conflict between the procedural requirement underlying the presentation of cases to *R.* 4:21 panels and the rule permitting amendment of answers to interrogatories up to twenty days before trial, *R.* 4:17–7. Unlike the *R.* 4:21 judge, however, the Appellate Division held that the *R.* 4:21 procedures did not preempt *R.* 4:17–7 and that therefore the plaintiffs in this case should have been permitted to amend their answers to interrogatories to name Dr. Ball as an expert. In reversing the order precluding Dr. Ball's testimony, however, the majority recommended that in the future,

> the pretrial judge include in the *R.* 4:21–2(c) pretrial order a "day certain" before the panel hearing for furnishing all information about experts and their reports, with specific reference to *R.* 4:7–4(e)'s explicit sanction that "such order * * * provide that an expert or treating physician whose name or report is not so furnished shall not be permitted to testify at trial." [*Id.* at 326.]

Although setting a "day certain" might achieve the right result, and although we encourage pretrial judges to adopt that procedure, we conclude that, at least where the panel's finding is unanimous, the failure to set a "day certain" should not permit the parties to invoke the liberal approach of *R.* 4:17–7 to the detriment of accomplishing the purpose of *R.* 4:21.[2] That purpose—the early disposition of medical malpractice actions through discouraging baseless actions and encouraging early settlement—is subverted if *R.* 4:21 is read to permit either party

---

[2]We do not decide here whether *R.* 4:17–7 should permit amendment of answers to interrogatories after the *R.* 4:21 panel has issued an opinion that is not unanimous. See *Markmann v. DeStefano,* —— *N.J.Super.* —— (App.Div. 1982) (App.Div. docket # A5339–80T3).

to correct the deficiencies of the case that was presented to the panel by naming a new expert after the panel hearing.

■ We hold therefore that after the panel has rendered a unanimous decision, the parties will not be permitted to amend their answers to interrogatories to name a new expert witness. Because this holding amounts to an exception to *R.* 4:17–7, the Rule will be amended in due course to correspond with today's decision.

### III

■ Our holding that a new expert may not be offered after a unanimous panel decision would ordinarily bar Dr. Ball's testimony in this case. However, because of the understandable confusion that has existed as to the role of *R.* 4:17–7 after *R.* 4:21 hearings, plaintiffs in this case ought to be permitted to amend their answers to interrogatories to include Dr. Ball as an expert witness. That confusion may well have induced plaintiffs to be less diligent in locating this expert than they would have been had they been aware that his testimony would be barred after the panel's decision.

We have in the past applied holdings prospectively where the interest of justice so required. *Jersey Shore Medical Center-Fitkin Hospital v. Baum's Estate*, 84 *N.J.* 137 (1980); *Darrow v. Hanover Twp*, 58 *N.J.* 410 (1971). This is such a case. For that reason we affirm the judgment of the Appellate Division insofar as it permitted the naming of Dr. Ball as an additional expert. However, the policies underlying *R.* 4:21, set forth above, demand that plaintiffs not be permitted to use Dr. Ball's testimony simply to impeach the panel's decision. Therefore, in order that the purposes of the panel hearing not be subverted, we direct that the panel before which this case was presented be reconvened, that it consider Dr. Ball's report (and testimony, if plaintiffs decide to present it, see *Nastri v. Franciosi*, 185 *N.J.Super.* 447 (App.Div.1982)), and that it issue a new

determination based on specific findings of fact. Before the panel is reconvened, defendants should be afforded a reasonable time within which to depose Dr. Ball if that be their wish. To that extent the judgment below is modified, and as modified, Affirmed. Costs to abide the event.

*For modification and affirmance*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For reversal*—None.